**COURT OF CHANCERY**
**OF THE**
**STATE OF DELAWARE**

KATHALEEN ST. JUDE MCCORMICK
CHANCELLOR

LEONARD L. WILLIAMS JUSTICE CENTER
500 N. KING STREET, SUITE 11400
WILMINGTON, DELAWARE 19801-3734

September 26, 2022

Peter J. Walsh, Jr., Esquire
Kevin R. Shannon, Esquire
Christopher N. Kelly, Esquire
Mathew A. Golden, Esquire
Callan R. Jackson, Esquire
Potter Anderson & Corroon LLP
1313 N. Market Street
Hercules Plaza, 6th Floor
Wilmington, DE 19801

Edward B. Micheletti, Esquire
Lauren N. Rosenello, Esquire
Skadden, Arps, Slate, Meagher & Flom LLP
920 N. King Street, 7th Floor
P.O. Box 636
Wilmington, DE 19899-0636

Brad D. Sorrels, Esquire
Wilson Sonsini Goodrich & Rosati, P.C.
222 Delaware Avenue, Suite 800
Wilmington, DE 19801

Re:    *Twitter, Inc. v. Elon R. Musk et al.*,
       C.A. No. 2022-0613-KSJM

Dear Counsel:

This letter addresses the motion filed by Defendants Elon R. Musk, X Holdings I, Inc., and X Holdings II, Inc. (collectively, "Defendants") on September 16, 2022, which seeks to compel Plaintiff Twitter, Inc. ("Plaintiff") to produce additional discovery. This decision refers to the motion as Defendants' "Seventh Discovery Motion."[1] Defendants' Seventh Discovery Motion seeks three categories of discovery: a deposition of Plaintiff's former General Manager of Revenue Product; unredacted versions of Slack threads produced by Plaintiff; and additional account data.

---

[1] *See* C.A. No. 2022-0613-KSJM, Docket ("Dkt.") 524 ("Defs.' Seventh Disc. Mot.").

Plaintiff responded to Defendants' Seventh Discovery Motion on September 23, 2022,[2] representing that Defendants' first two requests are now moot. I agree. The former employee agreed to sit for a deposition and Plaintiff's counsel re-reviewed its Slack threads and adjusted certain of its redactions.[3] That leaves one unresolved request—Defendants' motion for additional account data.

I assume that readers are familiar with the background of this dispute and will skip to the facts relevant to this decision. On August 25, 2022, I ordered Plaintiff to produce a "historical snapshot" of approximately 9,000 accounts reviewed in connection with Plaintiff's Q4 202 mDAU audit.[4] Plaintiff represented, and it was understood, that this would require a massive undertaking.[5] And it did. Plaintiff represents that more than fifty people, including data scientists, engineers, and members of the legal policy team, globally gathered hundreds of gigabytes worth of data from multiple sources.[6] Many had to be specifically trained to help with the project; their usual work was halted completely.[7] On September 9 and 13, Plaintiff produced the account data generated by these efforts.[8]

---

[2] Dkt. 594 ("Opposition").

[3] *Id.* at 3–5.

[4] *See* Dkt. 247 (Letter Decision Resolving Defendants' Second Discovery Motion).

[5] *Id.* at 3.

[6] Opposition at 6.

[7] *Id.*

[8] *Id.*

The production did not include two categories of account information that Defendants view as important: (i) time stamps associated with the unique combinations of User IDs and IP addresses that access the platform; and (ii) data regarding certain historical account actions by Plaintiff, including suspensions and "read only phone ownership" ("ROPO") status.[9]

Plaintiff argues that this additional data is not relevant to any aspect of the case, but Plaintiff endeavored to produce the time-stamp information in any event. On September 20, Plaintiff produced an additional 900 gigabytes of data, including fifteen million additional data points that reflect unique combinations of User IDs and IP addresses that accessed the platform for the accounts in the Q4 2021 mDAU audit sample.[10] Defendants have confirmed that this production mooted their request for time stamps.[11]

Defendants continue to press for the historical account data. Specifically, Defendants seek all information that the reviewers who conducted the mDAU audit had access to through an application called "Guano Notes," including but not limited to information regarding accounts that were suspended or placed in ROPO status. Plaintiff maintains that Defendants are not entitled to this data under my August 25 Order and that it is not relevant in any event, because the agents who performed the quarterly mDAU audit

---

[9] Defs.' Seventh Disc. Mot. at 11–12.

[10] Opposition at 7.

[11] Opposition, Ex. 1 at 1.

were not instructed to consider it.[12]  Still, Plaintiff has attempted to moot this issue, offering to produce additional data other than Guano Notes reflecting the suspension and ROPO status of each of the 9,000 accounts.[13]

I confess that I do not totally comprehend the significance of or burden in collecting Guano Notes.  The parties should be prepared to drill into this issue—albeit in layman's terms—during the September 27 hearing.  I will hold my determination on Defendants' Seventh Discovery Motion in abeyance until then.

IT IS SO ORDERED.

Sincerely,

*/s/ Kathaleen St. Jude McCormick*

Kathaleen St. Jude McCormick
Chancellor

cc:     All counsel of record (by *File & ServeXpress*)

---

[12] Opposition at 8; Opposition, Ex. 4 at 378:13–379:6.

[13] Opposition, Ex. 1 at 3.